**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

TERRI M. YATES,                              )
                                             )
                    Plaintiff,               )
                                             )
          v.                                 )          No. 4:19-CV-154 RLW
                                             )
SYMETRA LIFE INSURANCE CO.,                  )
                                             )
                    Defendant.               )

**<u>MEMORANDUM AND ORDER</u>**

This closed case is before the Court on Plaintiff Terri M. Yates' Motion to Alter or

Amend Judgment (ECF No. 56) under Rule 59(e), Federal Rules of Civil Procedure.  Defendant

Symetra Life Insurance Company ("Symetra") opposes the Motion and it is fully briefed.  The

Court will grant Plaintiff's Motion and reconsider its initial decision in this case.  For the

following reasons, the Court concludes that Plaintiff is not required to exhaust administrative

remedies, that Symetra's decision to deny accidental death benefits was erroneous, and that

Plaintiff's claim is not barred by a policy exclusion.  The Court will enter judgment in Plaintiff's

favor.

**I.  Procedural Background**

This removed case is an action for $50,000 in accidental death benefits under the

Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, <u>et</u> <u>seq.</u>[1]

---

[1]Plaintiff's state court Petition asserted a claim for breach of contract against Defendant Symetra
Life Insurance Company.  (ECF No. 4.)  The Court denied Plaintiff's motion to remand this case to state
court, as it rejected her argument that the employee benefits group insurance policy at issue here is
exempt from ERISA's coverage under the "safe harbor" provision, 29 C.F.R. § 2510.3-1(j), and
concluded the group insurance policy at issue is an ERISA benefit plan.  <u>See</u> Mem. and Order of Sept. 27,
2019 (ECF No. 15.).  <u>See</u> Mem. and Order of Sept. 27, 2019 (ECF No. 15).  Plaintiff subsequently filed
an Amended Complaint asserting a claim under ERISA (ECF No. 26).

Plaintiff Terry M. Yates' ("Plaintiff" or "Ms. Yates") husband, Johnny Yates, died from a heroin overdose on December 20, 2016, at the age of 50. At the time, Ms. Yates was a participant in an ERISA employee benefits group insurance policy provided by her employer. As Ms. Yates' spouse, Johnny Yates was an insured under the policy's coverages for Life Insurance and Accidental Death and Dismemberment. After her spouse's death, Ms. Yates filed claims under both coverages. Symetra paid the life insurance benefit but denied the accidental death benefit on the ground that Mr. Yates' death was excluded from coverage by an "intentionally self-inflicted injury" policy exclusion "in view of the fact that the cause of death was due to the insured's intentional act of using Heroin[.]" (ECF No. 42-4 at 3.)

Symetra moved for summary judgment on Plaintiff's ERISA claim for accidental death benefits, asserting it is entitled to judgment based on Plaintiff's failure to exhaust administrative remedies and on the merits of the denial. The Court found that Plaintiff failed to exhaust administrative remedies before filing suit and granted Symetra's motion for summary judgment on that issue. The Court did not reach the merits of Symetra's denial and dismissed the case without prejudice.

Plaintiff's Rule 59(e) Motion asserts that the Court erred in holding that Plaintiff failed to exhaust administrative remedies set forth only in Symetra's denial of benefits letter, because the ERISA plan document at issue did not include a review procedure to exhaust. The Court agrees and will grant Plaintiff's Rule 59(e) Motion, vacate its prior decision in this case, and address the merits of Plaintiff's denial of benefits claim.

**II.  Rule 59(e) Standard**

"Motions under Rule 59(e) serve the limited function of correcting manifest errors of law or fact or to present newly discovered evidence and cannot be used to introduce new evidence,

tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment." Yeransian v. B. Riley FBR, Inc., 984 F.3d 633, 636 (8th Cir. 2021) (quoting Ryan v. Ryan, 889 F.3d 499, 507 (8th Cir. 2018)).  Rule 59(e) was adopted to clarify that "the district court possesses the power to rectify its own mistakes in the period immediately following the entry of judgment." White v. New Hampshire Dep't of Employment Sec., 455 U.S. 445, 450 (1982) (internal quotations omitted).  District courts have broad discretion in deciding whether to grant a motion under Rule 59(e). Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills, 141 F.3d 1284, 1286 (8th Cir. 1998).

Plaintiff does not raise entirely new arguments in her Rule 59(e) Motion but cites additional case authorities, including out of circuit decisions and a federal regulation, in support of the argument she has made from the outset: that a plan participant must exhaust only those administrative remedies present in the plan document itself.  As such, the Court finds Plaintiff's Rule 59(e) Motion is procedurally proper and now reconsiders it prior ruling and concludes administrative exhaustion is not required.

## III. Administrative Exhaustion

### A. No Exhaustion is Required Because the Plan Documents Lack an Appeal Procedure

ERISA itself does not require a claimant to exhaust administrative remedies before suing to obtain benefits. Conley v. Pitney Bowes, 34 F.3d 714, 716 (8th Cir. 1994).  Because ERISA provides for the administrative review of benefits, however, the Eighth Circuit requires a claimant to "exhaust the administrative remedies required *under the particular ERISA plan*." Angevine v. Anheuser–Busch Cos. Pension Plan, 646 F.3d 1034, 1037 (8th Cir. 2011) (emphasis added) (citing Chorosevic v. MetLife Choices, 600 F.3d 934, 941 (8th Cir. 2010)).  The Eighth Circuit has explained that the administrative exhaustion requirement—

serves many important purposes, including "giving claims administrators an opportunity to correct errors, promoting consistent treatment of claims, providing a non-adversarial dispute resolution process, decreasing the cost and time of claims resolution, assembling a fact record that will assist the court if judicial review is necessary, and minimizing the likelihood of frivolous lawsuits."

Id. (quoting Galman v. Prudential Ins. Co. of Am., 254 F.3d 768, 770 (8th Cir. 2001)).

The Eighth Circuit excuses a beneficiary from the exhaustion requirement in certain limited circumstances.  Brown v. J.B. Hunt Transp. Servs., Inc., 586 F.3d 1079, 1085 (8th Cir. 2009).  ERISA participants have not been required to exhaust administrative remedies prior to filing suit when "an ERISA-governed plan fails to comply with its antecedent duty under § 1133 to provide participants with notice and review," id.; "when the available review procedures neither complied with ERISA's fiduciary review requirements nor applied to the specific claimants," Wert v. Liberty Life Assur. Co. of Boston, Inc., 447 F.3d 1060, 1064 (8th Cir. 2006); or if exhaustion of remedies would prove futile, which is a narrow exception.  Brown, 586 F.3d at 1085.

In this case, the parties agree that neither the Symetra Group Insurance Policy provided to Phelps County Bank nor the Employee Benefits Insurance Certificate provided to the Bank's employees includes an exhaustion requirement.  The Court finds that the Group Insurance Policy and the Employee Benefits Insurance Certificate constitute the plan documents, as these are the only documents in the record that could be considered plan documents, and Symetra has not provided any other documents that it contends are plan documents.

In moving for summary judgment, Symetra contends Plaintiff was required to exhaust the administrative appeal procedure set forth in letter that denied her claim.  Plaintiff responds that exhaustion was not required because Symetra's Group Insurance Policy does not include a

review procedure to exhaust, and the Eighth Circuit does not permit an ERISA plan administrator or court to impose extra-contractual terms.

The Court concludes that because Symetra did not include any internal claims review procedure in its plan documents, the plan does not include a contractual exhaustion requirement and Symetra cannot impose such a requirement on Plaintiff.

Symetra argues it was not required to include the appeal procedure in its plan documents because it detailed those procedures in its benefits denial letter to Plaintiff. "But 'one of ERISA's central goals is to enable beneficiaries to learn their rights and obligations at any time,' including before a denial of benefits, and Congress required plans to be 'established and maintained pursuant to a written instrument' that enabled beneficiaries to determine those rights and obligations 'on examining the plan documents.'" Wallace v. Oakwood Healthcare, Inc., 954 F.3d 879, 887-888 (6th Cir. 2020) (citing Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 83 (1995) (quoting 29 U.S.C. § 1102(a)(1); and then quoting H.R. Rep. No. 93-1280, at 297 H.R. Rep. No. 93-1280, at 297 (1974)). In Wallace, the Sixth Circuit held that for a plan fiduciary to avail itself of the judicially created exhaustion requirement, "its underlying plan document must—at minimum—detail its required internal appeal procedures." Id. at 888.[2]

The Sixth Circuit's holding in Wallace appears to be in accord with Eighth Circuit precedent, although the Eighth Circuit has not directly addressed the issue presented in this case. In Conley, the Eighth Circuit stated that the ERISA exhaustion doctrine is "a creature either of contract or judicial invention. We have required exhaustion in ERISA cases only when it was required by the particular plan involved." 34 F.3d at 716 (emphasis added, citing cases.) For instance, the full Eighth Circuit held that retirees were not required to exhaust an arbitration

---

[2] The Sixth Circuit's holding in Wallace was in the context of the "deemed exhausted" provision of 29 C.F.R. 2560.503-1(l) (2003).

procedure under an ERISA plan that did not include explicit plan language extending the plan's arbitration requirement to retirees as a class of participants.  Anderson v. Alpha Portland Indus., Inc., 752 F.2d 1293, 1295 (8th Cir. 1985) (en banc).

The Eighth Circuit has consistently emphasized the importance of the written language of ERISA plans and enforced plans as written.  This is in accord with the Supreme Court's instruction that ERISA is "built around reliance on the face of written plan documents," Curtiss-Wright Corp., 514 U.S. at 83, and that "[t]he plan, in short, is at the center of ERISA."  US Airways, Inc. v. McCutchen, 569 U.S. 88, 101 (2013).  The Eighth Circuit has refused to permit an ERISA claimant to rely on an oral collective bargaining agreement to claim benefits that were not set forth in the written terms of a welfare benefit plan.  See United Paperworkers Int'l Union, AFL-CIO v. Jefferson Smurfit Corp., 961 F.2d 1384, 1386 (8th Cir. 1992) ("The ERISA requirement that terms of a welfare benefit plan be committed to writing was intended to insure that employees could rely on the terms of the formal written plan provided to them without fear that unwritten, contrary terms would later surface.").

Applying similar reasoning, the Eighth Circuit declined to apply a common law equitable doctrine to alter the express terms of a written ERISA plan in order to reduce a plan administrator's entitlement to subrogation.  See Admin. Comm. of Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Shank, 500 F.3d 834, 838-39 (8th Cir. 2007) ("[W]hile ERISA is designed to protect the interests of plan participants and beneficiaries, those interests are specified by the written plan.  ERISA's 'repeatedly emphasized purpose [is] to protect contractually defined benefits.'  [Mass. Mut. Life Ins. Co. v.] Russell, 473 U.S. [134] at 148 [(1985)] (emphasis added).").  The Eighth Circuit stated, "ERISA's mandate that '[e]very

employee benefit plan shall be established and maintained pursuant to a written instrument,' 29 U.S.C. § 1102(a)(1), establishes the primacy of the written plan." Id. at 839.

Applying these authorities and principles to the present case, the Court concludes that Plaintiff was not required to exhaust administrative appeal procedures prior to filing this action, because the written plan documents did not contain any appeal procedures to exhaust.  See Conley, 34 F.3d at 716; see also Wallace, 954 F.3d at 888.  Symetra cannot add new appeal procedures by including them in the benefits denial letter it sent to Plaintiff, because this would be contrary to the terms of the formal written plan.  See United Paperworkers, 961 F.2d at 1386.

B.  Alternatively, Plaintiff's Claim is Deemed Exhausted

In addition to the exceptions to the administrative exhaustion requirement developed in Eighth Circuit case law, ERISA regulations establish an additional exception:

> In the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

29 C.F.R. 2560.503-1(l) (2003) (emphasis added).  The ERISA regulations require a plan to "establish and maintain a procedure by which a claimant shall have a reasonable opportunity to appeal an adverse benefit determination to an appropriate named fiduciary of the plan, and under which there will be a full and fair review of the claim and the adverse benefit determination."  29 C.F.R. § 2560.503-1(h)(1) (2003); see also 29 U.S.C. § 1133 (requiring employee benefit plans to allow participants whose claims have been denied "a reasonable opportunity . . . for a full and fair review by the appropriate named fiduciary of the decision denying the claim").

Symetra cannot meet ERISA's requirements of providing for full and fair review of claims and adverse benefit determinations by including appeal procedures only in its denial

letter. As stated above, "The ERISA requirement that terms of a welfare benefit plan be committed to writing was intended to insure that employees could rely on the terms of the formal written plan provided to them without fear that unwritten, contrary terms would later surface." United Paperworkers, 961 F.2d at 1386; see Curtiss-Wright Corp., 514 U.S. at 83 (1995) ("[a] written plan is to be required in order that every employee may, *on examining the plan documents*, determine exactly what his rights and obligations are under the plan.") (quoting H.R. Rep. No. 93-1280, at 297 H.R. Rep. No. 93-1280, at 297 (1974)). It is fundamental that ERISA "establishes the primacy of the written plan." Admin Comm. of Wal-Mart Stores, 500 F.3d at 839.

Symetra's plan documents do not contain any information about review procedures or remedies available for denied claims. Under Section 503 of ERISA, an employee benefit plan must provide participants "a reasonable opportunity" for their claim denials to receive "a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. §1133. A plan document that does not include information about internal appeal procedures cannot satisfy ERISA's requirement "that it 'sufficiently accurate[ly] and comprehensive[ly]' describe the terms of the plan and regulatory dictates that it include procedures for reviewing denied claims, remedies available for denied claims, and procedures required under Section 503." Wallace, 954 F.3d at 889 (citing 29 U.S.C. § 1022(a); 29 C.F.R. § 2520.102-3(s) (2001)).[3] Without such information, Symetra's plan document does not meet legal requirements, and the Court concludes in the alternative that Plaintiff is deemed "to have exhausted the administrative remedies available under the plan." See 29 C.F.R. § 2560.503-1(l).

---

[3]But see Holmes v. Colo. Coal. for Homeless Long Term Disability Plan, 762 F.3d 1195, 1211-13 (10th Cir. 2014) (holding the "deemed-exhausted provision [of 29 C.F.R. 2560.503-1(l)] is limited to instances in which the notice and disclosure deficiencies actually denied the participant a reasonable review procedure.").

Because Plaintiff's claim is not barred as a result of a failure to exhaust administrative remedies, the Court will deny Symetra's motion for summary judgment on this ground and turns to Symetra's argument that it did not err in denying Plaintiff's claim for accidental death benefits.

## IV.  Scope of Review and Legal Standards

The general rule in cases challenging the denial of employee benefits under ERISA § 502(a)(1)(B) is that a district court reviews the plan administrator's decision de novo, unless the plan gives the administrator discretionary authority to determine participants' eligibility for benefits, in which case the court must apply the highly deferential arbitrary and capricious standard of review.  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); King v. Hartford Life & Acc. Ins. Co., 414 F.3d 994, 998-99 (8th Cir. 2005) (en banc).  Whether a benefits plan grants discretionary authority is determined by reference to the plan's specific language.  The Eighth Circuit requires "explicit discretion-granting language" to appear in a policy or other plan documents in order to trigger a deferential standard of review, McKeehan v. Cigna Life Ins. Co., 344 F.3d 789, 793 (8th Cir. 2003), but it does not require the policy to use the word "discretion."  Hankins v. Standard Ins. Co., 677 F.3d 830, 835 (8th Cir. 2012).  Here, the parties agree that no explicit discretion-granting language is found in the Symetra plan document and therefore the Court's review of Symetra's decision is de novo.

Where judicial review of the administrator's decision is de novo, the reviewing court does not give any deference to the administrator's decision and makes its own determination whether the employee is entitled to benefits under the plan.  See Davidson v. Prudential Ins. Co. of Am., 953 F.2d 1093, 1095 (8th Cir. 1992) (citing Bruch, 489 U.S. at 110-15).  The Eighth Circuit has "interpreted Bruch to mean that unless the plan language specifies otherwise, courts

should construe any disputed language without deferring to either party's interpretation." Brewer v. Lincoln Nat'l Life Ins. Co., 921 F.2d 150, 153-54 (8th Cir. 1990) (internal quotation marks and quoted case omitted).  "[A] federal court may apply other aspects of the federal common law developed under ERISA to construe disputed terms in a plan[.]"  King, 414 F.3d at 998 (internal citations omitted).  Further, a court should review the employee's claims as it would "any other contract claim."  Wallace v. Firestone Tire & Rubber Co., 882 F.2d 1327, 1329 (8th Cir. 1989) (quoting Bruch, 489 U.S. at 112-13).

A plaintiff suing under ERISA to recover benefits due generally has the burden to prove entitlement to contractual benefits.  See Farley v. Benefit Trust Life Ins. Co., 979 F.2d 653, 658 (8th Cir. 1992).  The insurer, however, has the burden to establish that a specific policy exclusion applies to deny the insured benefits and prevents coverage.  Nichols v. Unicare Life and Health Ins. Co., 739 F.3d 1176, 1184 (8th Cir. 2014) (citing Farley, 979 F.2d at 658).

Admission of evidence outside the administrative record is generally discouraged on de novo review, Ferrari v. Teachers Ins. & Annuity Ass'n, 278 F.3d 801, 807 (8th Cir. 2002), but a court may admit additional evidence "if there is good cause to do so."  Avenoso v. Reliance Std. Life Ins. Co., 19 F.4th 1020, 1026 (8th Cir. 2021) (quoting King, 414 F.3d at 998).  A showing of good cause is required "to ensure expeditious judicial review of ERISA benefit decisions and to keep district courts from becoming substitute plan administrators[.]"  Donatelli v. Home Ins. Co., 992 F.2d 763, 765 (8th Cir. 1993).  Accordingly, a district court should not exercise its discretion to admit additional evidence in the absence of good cause.  Id.  Good cause may exist, for example, where additional evidence is necessary for adequate de novo review.  Id.; see, e.g., Weber v. Saint Louis Univ., 6 F.3d 558, 561 (8th Cir. 1993) (district court abused its discretion by refusing to allow discovery and receive additional evidence as to the date plaintiff's disability

began, where there was insufficient evidence in the record on the issue to sustain a judgment for either party).

Here, Plaintiff has not shown good cause for the Court to consider on de novo review the three exhibits she submitted for the first time in federal court.  The most significant of these is Plaintiff's affidavit (ECF No. 46-3), which was created well after this action was filed.  The affidavit contains evidence that was known or should have been known to Plaintiff during the administrative proceeding.  If Plaintiff believed this evidence was necessary for Symetra to make a proper benefits determination, she should have submitted it to Symetra while her claim was being reviewed.  See Davidson, 953 F.2d at 1095 (district court did not abuse its discretion in refusing to consider additional evidence, created after litigation had begun, that was known or should have been known to plaintiff during administrative proceedings).  The other exhibits are an email from the Phelps County Coroner addressed to "Benefits L&DI Claims" dated March 30, 2017 (ECF No. 46-1) which states that the Coroner did not personally investigate or author the report on Mr. Yates' death; and a printout from Missouri Case.net that shows a traffic charge against Mr. Yates from 2012 (ECF No. 46-2).  This evidence was also known or should have been known to Plaintiff during the administrative proceeding, and the Court finds Plaintiff's proffered exhibits are not necessary for adequate de novo review of the merits of her claim.

**V.  The Administrative Record[4]**

---

[4]The Court overrules Plaintiff's objection that documents from the administrative record constitute inadmissible hearsay.  The Court's review is "limited only by what was available to the plan administrator, not by the Federal Rules of Evidence.  See Black v. Long Term Disability Ins., 582 F.3d 738, 746 n.3 (7th Cir. 2009) ('The Federal Rules of Evidence, however, do not apply to an ERISA administrator's benefits determination, and we review the entire administrative record, including hearsay evidence relied upon by the administrator.'); see also Jett v. Blue Cross & Blue Shield of Ala. Inc., 890 F.2d 1137, 1139 (11th Cir.1989) (noting that administrator's determination is 'based upon the facts as known to the administrator at the time the decision was made')."  Herman v. Hartford Life & Acc. Ins. Co., 508 F. App'x 923, 928 (11th Cir. 2013) (unpublished per curiam).

The administrative record before the Court establishes the following facts:  A Group Insurance Policy (the "Policy') Symetra delivered to Phelps County Bank offered different types of coverage for the bank's eligible employees and their dependents. (See ECF No. 6-1.)  An Employee Benefits Insurance Certificate (ECF No. 42-1) provided to Phelps County Bank's employees "summarizes the major parts of the policy under which [they] are insured."  (Id. at 4.)  As previously stated, the Court finds that the Policy and the Employee Benefits Insurance Certificate are the plan documents.

As an employee of Phelps County Bank, Plaintiff was a participant in the employer-sponsored ERISA plan.  As Plaintiff's spouse, Johnny Yates was insured for Dependent Life Insurance and Accidental Death and Dismemberment coverage.

Under the Policy, Symetra will pay an Accidental Death benefit for loss of life due to "injury." (ECF No. 6-1 at 13.)  The Policy defines "injury" as "accidental bodily injury which is a sudden and unforeseen event, definite as to time and place" (id. at 16, ¶ 9), but does not define the terms "unforeseen," "accident" or "accidental."  The Accidental Death benefit of the Policy contains several exclusions, including the one at issue here:  "Symetra will not pay for any loss caused wholly or partly, directly or indirectly, by:  . . . intentionally self-inflicted injury, which [sic] sane." (Id. at 13.)  The Policy does not define the term "intentionally."

A document titled "Coroner Info Request" (ECF No. 42-2) states that on December 20, 2016, Johnny Yates' parents discovered him dead in his bedroom, lying on the floor face down.[5] (Id. at 1.)  Detective Meyer of the Rolla Police Department was the investigating officer (id.), and Det. Meyer and the acting Coroner, George Arnold, responded to the scene.  (Id. at 3.)  They rolled Mr. Yates' body over and found a hypodermic needle.  (Id.) The "bed was made and the

---

[5]The record does not disclose who authored the Coroner Info Request, which was dated the same day that Mr. Yates' body was found, December 20, 2016.

blanket was partially pulled back as if he was going to get into bed." (Id. at 1.)  They observed a needle plunger cap, needle cap, and medication bottle cap with a dried light brown substance inside on the nightstand.  (Id. at 1-2.)  The unknown author states, "During the investigation I found that Yates was a reported heroin user" (id. at 1) and, "While looking at Yates['] body, I found bruising along the inside of his forearms that was on top of veins.  I also located bruising on the right and lower left abdominal area.  I suspect that these were injection sites for heroin." (Id. at 2.)

The author concluded, "Based on the evidence at hand I suspect that Yates went to his room and planned on injecting a substance, most likely heroin, right before going to bed.  Yates accidentally overdosed while sitting on the edge of the bed and fell forward on the floor, face down.  Yates then passed away due to an accidental overdose.  Blood work was requested and this investigation will remain open until Yates' blood is analyzed." (Id. at 2.)

A Toxicology Report prepared by NMS Labs of Willow Grove, Pennsylvania, states that Mr. Yates' blood tested positive for the following compounds:

| | |
|---|---|
| Codeine - Free | 9.8 ng/mL |
| Morphine - Free | 200 ng/mL |
| 6-Monoacetylmorphine - Free | 2.6 ng/mL |

(ECF No. 42-3 at 1-2.)   The Toxicology Report's Reference Comments state in part that Codeine - Free is a DEA Schedule III narcotic analgesic with central nervous system depressant activity, Morphine - Free is a DEA Schedule II narcotic analgesic, and 6-Monoacetylmorphine - Free is the 6-monoacetylated form of morphine, which is generally indicative of heroin (diacetylmorphine) use.  (Id. at 2.)

Following Mr. Yates' death, Symetra paid Plaintiff's claim for spousal life insurance benefits but denied her claim for Accidental Death benefits by letter dated June 27, 2017 (the "Denial letter") (ECF No. 42-4).  The Denial letter stated:

> We have completed our review of your claim for the additional Supplemental Spouse Accidental Death benefit and have determined it is not payable because Mr. Yates' loss is not covered under the Policy.  Please allow us to explain.
>
> We used the following information in order to review your claim for benefits:
>
> 1. The state of Missouri Certificate of Death; [6]
>
> 2. Synopsis of investigation by Coroner including toxicology results.
>
> The Death Certificate states Mr. Yates' cause of death was Heroin Overdose.  The Coroner Info Request stated Mr. Yates was found deceased in his bedroom.  A hypodermic needle and medication bottle cap with a dried light brown substance were located in his bedroom.  It was also stated that he was a reported heroin user.
>
> The Toxicology Report states the following drug levels were detected in Mr. Yates' blood:
>
> Source: Cardiac Blood
>
> | | |
> |---|---|
> | Codeine- Free | 9.8 ng/mL |
> | Morphine- Free | 200 ng/mL |
> | 6-Monoacetylmorphine- Free | 2.6 ng/mL |
>
> Under Accidental Death and Dismemberment provision, the policy states, in part:
>
> "<u>Benefit</u>
>
> Symetra will pay if an employee suffers any of the following losses due to injury and meets all of the stated Conditions.
>
> The benefit amount is expressed as a percentage of the amount shown in the Schedule.
>
> | <u>Loss</u> | <u>Benefit Amount</u> |
> |---|---|
> | Loss of Life | 100%..." |

---

[6]Mr. Yates' Death Certificate is not in the record.

The policy also contains the following exclusion under the Accidental Death and Dismemberment Insurance provision:

"Exclusions:

Symetra will not pay for any loss caused wholly or partly, directly or indirectly, by:

. . . (d) intentionally self-inflicted injury, while sane;…"

Consumption of Heroin is a voluntary act.  Mr. Yates used Heroin and subsequently passed away while under the influence of the Heroin due to an overdose.  Under the law, when it is reasonable that the insured would have foreseen that using an illegal drug and being under the influence of Heroin could result in death or serious bodily harm, the cause of death is not accidental.  In this case, in view of the fact that the cause of death was due to the insured's intentional act of using Heroin, this event cannot be considered "accidental" or "unintentional" (see contract provisions set forth above).  Therefore, Symetra finds that the Accidental Death benefit is not payable.

(ECF No. 42-4 at 1-2) (emphasis added).  The Denial letter does not cite any case law in support of its reasoning.

## VI. Discussion

Symetra moves for summary judgment on the merits of Plaintiff's claim for Accidental Death benefits and asserts that Plaintiff cannot prove its decision to deny her claim for benefits under the policy is wrong.[7]  Symetra's contention is that because Mr. Yates voluntarily injected heroin, which caused his death by overdose, his death was not an accident and was an intentionally self-inflicted injury that is expressly excluded from coverage.  (ECF No. 41 at 8.)

A.  Mr. Yates' Death was Accidental Under the Policy

As previously stated, the Policy does not define the term "accident" but defines "injury" as "accidental bodily injury which is a sudden and unforeseen event, definite as to time and place."  The Policy also does not define "unforeseen."  It is not clear from the Denial letter whether Symetra determined that Mr. Yates' death was not accidental under its interpretation of

---

[7]Plaintiff did not file a cross-motion for summary judgment.

the definition of accidental death, or whether it determined that Mr. Yates' death fell within the intentionally self-inflicted injury exclusion, or both.[8]  As a result, the Court will discuss both whether Mr. Yates' death was accidental and whether it fell within the Policy exclusion.

It is apparent that Symetra's Denial letter uses different language than the Policy's Accidental Death benefits coverage, although the Denial letter makes reference to Policy language.  The Policy defines "injury" as "accidental bodily injury which is a sudden and unforeseen event, definite as to time and place."  Because the Policy does not define the term "unforeseen," it is appropriate to use a dictionary to give the word its ordinary meaning.  King, 414 F.3d at 1015 (Gruender, J., dissenting) (citing Cash v. Wal-Mart Group Health Plan, 107 F.3d 637, 643-44 (8th Cir. 1997)).  Merriam Webster's Dictionary defines "unforeseen" as "not anticipated or expected: not foreseen: unexpected."[9]

In contrast, the Denial letter states that the cause of death is not an accident "when it is reasonable … the insured would have foreseen that using an illegal drug … could result in death or serious bodily harm[.]"  There is a fine but meaningful distinction between the Policy term "unforeseen event," and the Denial letter's explanation that when a "reasonable" person "would have foreseen" that injury could result from an action, the "event cannot be considered 'accidental' or 'unintentional.'"  This distinction will be discussed infra.

In support of its decision to deny benefits, Symetra relies primarily on an unpublished district court decision from the Western District of Missouri that applied a four-factor test, originally articulated by a Michigan district court in 1991, to determine whether a policy exclusion for self-inflicted injuries applied to an overdose death.  See Schmidt v. Metro. Life Ins.

---

[8] Symetra's summary judgment briefing appears to rely exclusively on the Policy's intentionally self-inflicted injury exclusion.

[9] Merriam Webster Dictionary,  https://www.merriam-webster.com/dictionary/unforeseen  (last visited Dec. 30, 2021).

Co., 2009 WL 2982918, at *6 (W.D. Mo. Sept. 14, 2009) (citing Holsinger v. New England Mut. Life Ins. Co., 765 F. Supp. 1279 (E.D. Mich. 1991)).  The Holsinger factors as applied by the court in Schmidt are: "(1) Was the ingestion intentional?; (2) Did the insured know that the ingestion would be likely to cause an injury?; (3) Did the ingestion cause an injury?; and (4) Did the loss result from the injury?"  2009 WL 2982918, at *6 (citing cases).  Symetra contends that under the Holsinger test, Plaintiff's claim was properly denied because Mr. Yates intentionally injected heroin, he knew it was likely to cause an injury, and it caused his death.

The Court declines to apply the Holsinger test.  The test has been criticized by numerous courts, including the district court that initially articulated it.  See Jessen v. CIGNA Group Ins., 812 F.Supp.3d 805, 819 (E.D. Mich. 2011) ("As many other courts have observed, the Holsinger standard cannot be correct." (cited cases omitted)).  "Rather than focusing on intentional ingestion of the drug, the inquiry must focus on whether the action is purposeful towards a goal." Id. (cited case omitted) (emphasis added).  The district court in Jessen also correctly observed that a subsequent Sixth Circuit decision "casts doubt on the validity of the formulation of the self-inflicted injury exception suggested by the Court in Holsinger."  Id. (citing Kovach v. Zurich Am. Ins. Co., 587 F.3d 323, 339 (6th Cir. 2009)).[10]

The Eighth Circuit has used the widely accepted test from Wickman v. Northwestern National Insurance Co., 908 F.2d 1077, 1088 (1st Cir. 1990), "as a framework for discerning the

---

[10]In Kovach, the Sixth Circuit adopted the Wickman standard, followed the Eighth Circuit's reasoning in King, and held that denial of a claim for accidental dismemberment benefits on the basis of the self-inflicted injury exception was arbitrary and capricious where the insured "acted intentionally in drinking to excess and then riding his motorcycle" but "nothing in the record indicates he did so with a mind toward harming himself."  Kovach v. Zurich Am. Ins. Co., 587 F.3d 323, 337, 339 (6th Cir. 2009). The Sixth Circuit said the plan administrator's "interpretation of the exclusion in question conflates intentional *actions* with intentional *results*," id. at 339, and explained that the insured's "injuries . . . were the result of the collision, not simply a consequence of his acts of drinking and driving."  Id.  The Sixth Circuit's analysis in Kovach and adoption of Wickman does not appear compatible with the Holsinger test.

meaning of 'accident,'" <u>McClelland v. Life Insurance Co. of North America</u>, 679 F.3d 755, 758 n.2 (8th Cir. 2012), and has applied it in a number of cases where parties have asserted it is the appropriate standard to review the denial of ERISA benefits.  <u>See</u>, <u>e.g.</u>, <u>Nichols</u>, 739 F.3d 1176; <u>King</u>, 414 F.3d 994.  Although the Eighth Circuit has not expressly adopted the <u>Wickman</u> test, the Court finds it should be applied here.

Under <u>Wickman</u>, "an event is an accident if the decedent did not subjectively expect to suffer 'an injury similar in type or kind to that suffered' and the suppositions underlying that expectation were reasonable."  <u>Nichols</u>, 739 F.3d at 1182 (quoting <u>Wickman</u>, 908 F.2d at 1088). "The determination of what suppositions are unreasonable should be made from the perspective of the insured, allowing the insured a great deal of latitude and taking into account the insured's personal characteristics and experiences."  <u>McClelland</u>, 679 F.3d at 758 n.2 (quoting <u>Wickman</u>, 908 F.2d at 1088).  "If the evidence is insufficient to determine the decedent's subjective expectation, the question is then whether 'a reasonable person, with background and characteristics similar to the insured, would have viewed the injury as highly likely to occur as a result of the insured's intentional conduct.'"  <u>Id.</u> (quoting <u>Wickman</u>, 908 F.2d at 1088).

Symetra's Denial letter provides no indication that it attempted to ascertain Mr. Yates' subjective expectations or whether a reasonable person in his position would have viewed his death as highly likely to occur as a result of injecting heroin.  The administrative record is devoid of evidence that Mr. Yates subjectively expected to die of an overdose when he injected heroin. There is no evidence of his personal characteristics and experiences, that he had suicidal thoughts, made any statements concerning an intent to commit suicide, or had a history of suicidal thoughts or attempts.  There is also no physical evidence of suicidal intent, such as a suicide note.  Mr. Yates' body was found face-down on the floor of his bedroom, where he

apparently fell after injecting the heroin.  His bed had been made and was partially turned down, as if he was preparing to go to sleep.  The Coroner Info Request's conclusion that Mr. Yates died of an accidental overdose is not controlling, but nothing in the Request supports the theory that Mr. Yates subjectively expected to die when he injected heroin.  The evidence here is insufficient to determine Mr. Yates' subjective expectations.[11]

The Court now considers "whether 'a reasonable person, with background and characteristics similar to the insured, would have viewed the injury as highly likely to occur as a result of the insured's intentional conduct.'"  McClellan, 679 F.3d at 758 n.2 (quoting Wickman, 908 F.2d at 1088).  Symetra argues that Mr. Yates was 50 years old, "not a youth experimenting with drugs" and was a "known user of heroin" (ECF No. 41 at 12), and thus it was "reasonable" he "would have foreseen that using an illegal drug and being under the influence of heroin could result in death or serious bodily harm."  (ECF No. 42-4 at 2.)

There is no evidence in the administrative record on the likelihood of death following heroin injection in the general United States population, for 50-year-old males or otherwise.  Symetra's briefing characterizes Mr. Yates as a "long-time user of heroin" and a "known heroin user."  There is no evidence in the administrative record to support that Mr. Yates was a long-term heroin user.  Even if the Court were to accept this unsupported speculation, it would not establish that a reasonable 50-year-old person who was a long-time user, or a "known user" of heroin, would have viewed death as highly likely to occur as a result of the intentional decision to inject heroin.  Instead, this would tend to prove that a reasonable person who used heroin on a long-term basis, or was a known heroin user, would not have viewed death as highly likely to

---

[11]The Court is mindful that Symetra did not contend Mr. Yates committed suicide, but evidence that he intended to die when he injected heroin—or the lack of any evidence that he intended to do so—is relevant to the first portion of the Wickman test, whether "the decedent did not subjectively expect to suffer 'an injury similar in type or kind to that suffered' and the suppositions underlying that expectation were reasonable."  Nichols, 739 F.3d at 1182.

occur as a result of injecting heroin, because the person would have done so successfully in the past.  See Nichols, 739 F.3d at 1183 ("[T]he objective evidence tended to show that [decedent] had been ingesting a combination of prescribed medication for some time, and under these circumstances, a reasonable person with [decedent's] characteristics would not have viewed death as highly likely to occur."); see also Padfield v. AIG Life Ins. Co., 290 F.3d 1121, 1127 (9th Cir. 2002) (where decedent had a history of engaging in autoerotic behavior and surviving it, there was nothing to suggest he subjectively expected otherwise; holding the death was "accidental" within the meaning of the policy).  It also ignores common sense to suggest that all middle-aged males who inject heroin should reasonably expect to die as a result.

When reviewing an ERISA plan de novo, a court must interpret the terms of the plan by "'giving the language its common and ordinary meaning as a reasonable person in the position of the [plan] participant, not the actual participant, would have understood the words to mean.'" Adams v. Continental Cas. Co., 364 F.3d 952, 954 (8th Cir. 2004) (quoting Hughes v. 3M Retiree Med. Plan, 281 F.3d 786, 789-790 (8th Cir. 2002)).  The Policy defines "injury" to mean "accidental bodily injury which is a sudden and unforeseen event, definite as to time and place," but does not define "unforeseen," "accident" or "accidental."  As noted above, there is a meaningful difference between an "unforeseen event," i.e., an event that is not anticipated or expected, and Symetra's interpretation of accidental injury as set forth in the Denial letter and as argued in its briefing.

Under Symetra's interpretation, an accidental injury excludes any event that is foreseeable by a reasonable person, i.e., that is reasonably foreseeable.  This is a far broader standard than the Policy's language of an unforeseen event or, under Wickman, an event that is reasonably viewed as "highly likely to occur."  Symetra's interpretation of the Policy language is

not consistent with the common and ordinary meaning of the word "unforeseen."  As the en banc

Eighth Circuit observed in <u>King</u>, "an insurance company's assertion that a 'foreseeable'

occurrence is not covered by an accidental death policy would be a dicey proposition."

<u>McClelland</u>, 679 F.3d at 758 n.3 (quoting <u>King</u>, 414 F.3d at 1002).  The Eighth Circuit criticized

the reasonably foreseeable standard on the basis that it would frustrate the legitimate

expectations of plan participants:

> a "reasonably foreseeable" standard is quite broad; if all "reasonably foreseeable"
> injuries are excluded from coverage, then the definition of accident may frustrate
> the legitimate expectations of plan participants, for insurance presumably is
> acquired to protect against injuries that are in some sense foreseeable. If
> Hartford's definition of "accidental bodily injury" were so narrow that it could
> eliminate many injuries that an average plan participant would expect to be
> covered based on the plain language of the plan, then there would be a question
> whether it conflicts with the statutory requirement that a plan be "written in a
> manner calculated to be understood by the average plan participant."  29 U.S.C.
> § 1022(a).

<u>King</u>, 414 F.3d at 1002.

Judge Bright's concurring opinion compared the highly likely standard of <u>Wickman</u> to

the reasonably foreseeable standard and noted,

> The highly-likely standard not only creates a far more inclusive definition of
> "accident," but also requires more care and consideration in assessing likelihoods.
> The reasonably-foreseeable standard, by contrast, not only could define away
> most accidents resulting from the victim's imprudence or negligence, but also
> provides an easy way for an insurance company to deny just claims relating to
> accidents.

<u>King</u>, 414 F.3d at 1007, n.6 (Bright, J., concurring).  This comparison is apt here, applied to the

Policy's term "unforeseen" and Symetra's interpretation of it.

Judge Bright observed that the federal common law definition of "accident" is the

definition developed in <u>Wickman</u> and subsequent cases.  <u>Id.</u>  He argued against applying a

"reasonably-foreseeable" standard in cases such as this:

As the <u>Wickman</u> court noted, people buy accident insurance to protect themselves against their own negligence—that is, voluntary but imprudent conduct that may with reasonable foreseeability result in injuries or even death.  <u>See</u> 908 F.2d at 1088.

By excluding from accident coverage any injury that was reasonably foreseeable, the plan administrator's decision would seem to make nonsense of the concept of an "accident."  It would seem to reduce "accident insurance" to insurance only for strange, unforeseeable injuries (e.g., choking to death on a piece of meat) or for injuries in which the victim was passive rather than active (being struck by lightning or being run down by a reckless driver while crossing the street).  Such a construction of the terms of an insurance plan would turn the insurance policy into a trap for the unwary.  It would deceive employees—attracting them to a job with the promise of benefits that turn out, when they are claimed, to be illusory.  Such interpretations of plan language by a plan administrator constitute an abuse of discretion—under the third <u>Finley</u> factor, namely, that a decision may not violate the substantive or procedural requirements of ERISA (by, for instance, misleading plan participants).  <u>See</u> <u>Lutheran Med. Ctr. v. Contractors Health Plan</u>, 25 F.3d 616, 621 (8th Cir. 1994); <u>Brumm v. Bert Bell NFL Ret. Plan</u>, 995 F.2d 1433, 1439-40 (8th Cir. 1993).  Such a definition also runs afoul of the first <u>Finley</u> factor: It is not consistent with the goals of an accident insurance plan to deny coverage for all accidents other than those in which the victim was passive or which did result from the victim's own actions but were so bizarre as to be unforeseeable.

414 F.3d at 1008–09 (Bright, J., concurring) (footnote omitted).[12]

Symetra's conclusion that because Mr. Yates voluntarily injected heroin his death was reasonably foreseeable, and therefore was not an accident, is an unreasonable interpretation of the Policy's language.  Under the logic of Symetra's interpretation, any injury resulting from a voluntary act would be reasonably foreseeable and therefore would not be an accident.  As the Eighth Circuit stated in <u>King</u>, "[I]f all 'reasonably foreseeable' injuries are excluded from coverage, then the definition of accident may frustrate the legitimate expectations of plan participants, for insurance presumably is acquired to protect against injuries that are in some

---

[12]The <u>Finley</u> factors mentioned in Judge Bright's concurrence are used where a plan gives the administrator discretionary power to construe uncertain terms or make eligibility determinations, to determine whether a plan administrator's interpretation of an uncertain term is "reasonable."  <u>King</u>, 414 F.3d at 998-99 (discussing <u>Finley v. Special Agents Mut. Benefit Assoc., Inc.</u>, 957 F.2d 617, 621 (8th Cir. 1992)).  Because the Policy in this case does not give Symetra discretionary power, the <u>Finley</u> factors are not applicable here.

sense foreseeable." King, 414 F.3d at 1002. And as Judge Bright commented, "By excluding from accident coverage any injury that was reasonably foreseeable, the plan administrator's decision would seem to make nonsense of the concept of an 'accident.'" Id. at 1008 (Bright, J., concurring).[13]

The Court concludes that under the Wickman test, based on the evidence in the record, Plaintiff has established it is more likely than not that Mr. Yates' death by heroin overdose was an accident, i.e., that it was unforeseen.   There is no evidence that Mr. Yates subjectively intended to overdose on heroin, and there is also no evidence that a reasonable person, with background and characteristics similar to the insured, would have anticipated or expected death to occur as a result of the intentional injection of heroin.

---

[13]Judge Bright cogently explained and illustrated the distinction between the common law definition of an accident and a reasonably foreseeable event:

> The gulf between the common law definition and the plan administrator's definition here is telling.  The two definitions are at opposite poles.  The common law definition asks whether the victim could reasonably have expected to *escape* the injury.  …. The plan administrator's definition here asks whether the victim could reasonably have expected to *suffer* the injury.  As Justice White noted, one can reasonably expect to *escape* injury so long as the injury is not "substantially certain." See Todd, 47 F.3d at 1456.  On the other hand, a slim chance of an injury—mere foreseeability—is enough to say one "could expect" to *suffer* an injury.  If the common law definition, developed through many cases in several courts, is reasonable, one would not expect a reasonable discretionary definition by a plan administrator to be separated by so vast a chasm from the common law definition.

> Let us briefly examine the possible results of the plan administrator's definition, which could exclude from "accident" coverage all deaths or injuries that were reasonably foreseeable.  When a woman stands on a shaky stool to reach for a bottle of baby formula on the top shelf of the cupboard, it is reasonably foreseeable that she will fall and, in crashing to the kitchen counter and then to the floor, break her neck.  Under the plan administrator's definition, the woman's injury is not an accident.  When a lineman working atop an electricity pole relies on his partner to have cut the power, instead of checking it himself, it is reasonably foreseeable that he will be electrocuted.  Under the plan administrator's definition, the lineman's injury would be ruled a non-accident.  When a man speeds his pregnant wife to the hospital, breaking the speed limit, it is reasonably foreseeable that he will crash the car and injure the passengers. Applying a reasonably-foreseeable standard, the plan administrator could rule the injuries not accidental.

King, 414 F.3d at 1008 (Bright, J. concurring).

B. <u>Symetra Fails to Establish that a Policy Exclusion Applies</u>

Having found that the record evidence shows Mr. Yates' death was more likely than not accidental, the Court turns to Symetra's argument that the Policy's exclusion for intentionally self-inflicted injuries applies to bar Plaintiff's accidental death benefits claim.

The Policy's language requires that an excluded injury be both self-inflicted and intentional. The en banc Eighth Circuit addressed an intentionally self-inflicted injury policy exclusion in <u>King v. Hartford Life Insurance Co.</u> In <u>King</u>, the insured died in a motorcycle accident and at the time had a blood alcohol content of 0.19. 414 F.3d at 997. The accidental death policy at issue contained an exclusion for "intentionally self-inflicted injury, suicide, or attempted suicide, whether sane or insane," which is substantially similar to the policy exclusion in the present case. The ERISA plan administrator in <u>King</u> denied benefits based on the exclusion, finding the insured's "alcohol intoxication was itself an 'intentionally self-inflicted injury' that 'contributed to' his injuries and death." <u>Id.</u>

The Eighth Circuit rejected the <u>King</u> plan administrator's interpretation as an unreasonable interpretation of the plan's language, even under the deferential abuse of discretion standard. <u>Id.</u> at 1000, 1004.[14] The Eighth Circuit stated:

> The most natural reading of the exclusion for injuries contributed to by "intentionally self-inflicted injury, suicide, or attempted suicide" does not include injuries that were unintended by the participant, but which were contributed to by alcohol intoxication. The Seventh Circuit seemed to think this self-evident when it explained in a case involving death by drunk driving that the plan at issue "does not specifically exclude from coverage the conduct at issue *but does exclude other conduct*—notably suicide, attempted suicide and *purposefully self-inflicted injury*." <u>Cozzie [v. Metro. Life. Ins. Co.]</u>, 140 F.3d [1104] at 1111 [(7th Cir. 1998)] (emphases added). One rarely thinks of a drunk driver who arrives home safely as an "injured" party, and to define drinking to the point of intoxication as an "intentionally self-inflicted injury, suicide, or attempted suicide" is at least a

---

[14]The Eighth Circuit also rejected the plan administrator's decision based on the self-inflicted injury exclusion as a <u>post</u> <u>hoc</u> rationale that differed from the stated basis for denying benefits. <u>King</u>, 414 F.3d at 1005.

"startling construction."   [Brumm v. Bert Bell NFL Ret. Plan, 995 F.2d 1433, 1440 (8th Cir. 1993)].

King, 414 F.3d at 1004.

More recently, the Eighth Circuit rejected a plan administrator's argument that the insured's consumption of numerous prescription medications that resulted in her death was an intentional action for which she would have subjectively expected death to be a highly likely outcome. Nichols, 739 F.3d 1176. The court held the plan administrator erred in refusing to pay an accidental death benefit where there was no evidence to suggest the insured was suicidal and the objective evidence showed she had been ingesting a combination of prescribed medications for some time. Id. at 1182-83. The Eighth Circuit approved the district court's conclusion that "all of the evidence indicates that [the insured's] death was the unexpected result of ingesting prescribed medications." Id. at 1183 (quoted case omitted). In another case, the Eighth Circuit reversed the denial of accidental death benefits where the insured was a drug user, but "all of the evidence indicated that [he] accidentally ingested a lethal dose of morphine." Sheehan v. Guardian Life Ins. Co., 372 F.3d 962, 967 (8th Cir. 2004).

Other courts have concluded that deaths due to drug overdoses are not necessarily intentionally self-inflicted injuries within the meaning of policy exclusions. The Seventh Circuit held that where the insured voluntarily took a drug, but there was no evidence she was aware of the risk of serious injury or death, an intentionally self-inflicted injury exclusion did not bar an accidental death claim. Santaella v. Metro. Life Ins. Co., 123 F.3d 456, 465 (7th Cir. 1997) (applying standards from Wickman and Todd v. AIG Life Ins. Co., 47 F.3d 1448, 1456 (5th Cir. 1995)). The Seventh Circuit explained, "A self-inflicted injury may be accidental, where accidental is taken to mean unintentional rather than unexpected. For example, it is an accident when someone hits his thumb with a hammer when driving a nail. The injury was self-inflicted

but not intended, hence accidental." Id. (quoting Casey v. Uddeholm Corp., 32 F.3d 1094, 1097 (7th Cir. 1994)).

In an ERISA case with similar facts to the present case, the plan participant died of an overdose after he injected heroin while on a business trip.  On de novo review, the district court concluded the death was accidental where there was no evidence the decedent intended to cause himself injury or death, or to establish that a reasonable person would have viewed the injury as highly likely to occur as a result of the intentional conduct.  Jessen, 812 F.Supp.2d at 814-18 (E.D. Mich. 2011) (applying the Wickman test).  The court held that the act of voluntarily injecting heroin resulting in death did not fall within the policy's self-inflicted injury exclusion for the same reasons, id. at 818-20.

The Jessen court stated it was "not reasonable to read the self-inflicted injury exclusion . . . to include unintended injuries that result from voluntary engaging in risky behavior.  To do so would require reading additional requirements into the plan."  Id. at 820 (quoting Harrell v. Met. Life Ins. Co., 401 F.Supp.2d 802, 811 (E.D. Mich. 2005)).[15]  Further, "Although 'death can be a foreseeable consequence of overdosing on drugs, . . . many results are the foreseeable consequence of risky actions.'"  Id. (quoting Andrus v. AIG Life Ins. Co., 368 F.Supp.2d 829, 834 (N.D. Ohio 2005)).  The court concluded that for an injury to be intentionally self-inflicted, "[I]t is not sufficient merely that a serious risk was willingly undertaken, so long as injury was not intended and, objectively, was not likely to occur."  Id. (quoting Critchlow v. First UNUM Life Ins. Co. of Am., 378 F.3d 246, 263 (2d Cir. 2004)).  The Court finds this reasoning persuasive.

---

[15]The Court notes the Symetra Policy's Accidental Death benefit coverage has a number of exclusions but does not have an exclusion for drug use or overdose, as some policies do.

In an analogous case, the decedent died after a night of heavy drinking and the toxicology report showed a blood alcohol level of 0.34% gm.  The plan administrator denied an accidental death benefits claim on the basis that the death was not accidental and was intentionally self-inflicted, because the decedent knowingly and intentionally consumed alcohol to excess.  Stischok v. Harford Life Group Ins. Co., 2008 WL 859036, at *9 (S.D. Ohio Mar. 31, 2008).  As in this case, the insurer stated in the denial letter that the decedent's alcohol intoxication was *itself* the intentionally self-inflicted injury, and that the death was not accidental, but was intentional "due to the consequences of his action of excessive drinking."  Id. at *10.  The district court in Stischok applied the Wickman test and concluded that denial of accidental death benefits under the policy's intentionally self-inflicted injury exclusion was arbitrary and capricious.  Id. at *10-12 (citing cases, including King, 414 F.3d 994).  The court explained that "[i]nherently risky activities . . . do not necessarily fall within the self-inflicted injury exclusions under ERISA plans.  In order for risky behavior to be considered a self-inflicted injury, . . . the decedent must have known that the risky behavior was likely to cause his or her injury."  Id. at *12.

In another comparable case, a plan participant died after voluntarily ingesting cocaine and alcohol.  On de novo review, the district court rejected the plan administrator's argument that ingestion of drugs and alcohol was an intentional self-injury that barred death benefits under a policy exclusion.  McDonough v. Federal Ins. Co., 2012 WL 4060564, at *5 (D. Mass. Sept. 14, 2012).  The court explained, "While the use of drugs and alcohol may cause some incidental bodily injury to the user, to suggest, that, as a *per se* rule, every drug and alcohol user *intends* to injure himself with such use, is divorced from reality."  Id.  The record before the court included no evidence of any desire by the insured to commit suicide or to intentionally harm himself.  Id.

Under the principles set forth in the Eighth Circuit's decisions in King and Nichols, applied to the facts of this case, and considering other persuasive decisions involving voluntary drug use resulting in an overdose, the Court concludes the Policy's exception for "intentionally self-inflicted injuries" does not include injuries that were unintended by Mr. Yates, but which were caused by his injection of heroin.  Mr. Yates voluntary engaged in actions that led to a fatal injury, but Symetra offers no evidence that Mr. Yates intended his death to occur or that he should have anticipated or expected that death was likely to occur as a result of injecting heroin; or, using the language of the Wickman test, that he should have known his death was highly likely to occur as a result.  Instead, Symetra interprets the Policy's intentionally self-inflicted injuries exclusion to conflate Mr. Yates' intentional *actions* with intentional *results*.  This is error.  There is no evidence that Mr. Yates' death was anything other than a fatal mistake.

In the absence of evidence that Mr. Yates intended his death to occur or that he should have known death was highly likely to occur as a result of injecting heroin., Symetra does not meet its burden to establish that the intentionally self-inflicted injury exclusion bars Plaintiff's recovery of accidental death benefits, and it applying the exclusion to deny benefits.  See Nichols, 739 F.3d at 1184 (under ERISA, an insurer has the burden to prove that an exclusion applies).

C.  Judgment Should be Entered in Plaintiff's Favor

As discussed above, the Court has found that the evidence in the record establishes it is more likely than not that Mr. Yates' death was accidental.  The Court has further found that Symetra has not met its burden to establish that the intentionally self-inflicted injury exclusion bars accidental death benefits under the Policy.

Plaintiff did not file a cross-motion for summary judgment in this case. Based on the Court's findings herein, and the full and fair opportunity Symetra had as the moving party to brief the facts and the law in this case, the Court will enter judgment in favor of Plaintiff because her right to summary judgment turns on the same issues and there is no reason to delay the entry of judgment in her favor. See Global Petromarine v. G.T. Sales & Mfg., Inc., 577 F.3d 839, 844 (8th Cir. 2009) ("a determination of summary judgment *sua sponte* in favor of the prevailing party is appropriate so long as the losing party has notice and an opportunity to respond.") (citing cases).

## VII. Conclusion

The Court concludes that Plaintiff's failure to exhaust administrative remedies does not bar her claim for denial of ERISA accidental death benefits, because the plan documents at issue do not contain any appeal procedures that must be exhausted. In the alternative, the Court concludes that Symetra's plan documents do not comply with ERISA's requirements and as a result Plaintiff's claim must be deemed exhausted.

For the reasons discussed above, the Court further concludes that Mr. Yates' death was accidental, Symetra's decision to deny accidental death benefits was erroneous, and the Policy's intentionally self-inflicted injury exclusion does not bar Plaintiff's claim. Plaintiff is entitled to the $50,000 accidental death benefit under the Symetra Group Insurance Policy issued to Phelps County Bank. The Court will enter judgment in Plaintiff's favor.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Terri M. Yates' Motion to Alter or Amend Judgment (ECF No. 56) under Rule 59(e), Fed. R. Civ. P., is **GRANTED**.

**IT IS FURTHER ORDERED** that the Memorandum and Order of May 26, 2021 (ECF No. 54) and the Order of Dismissal (ECF No. 55) are **VACATED**.

**IT IS FURTHER ORDERED** that Defendant Symetra Life Insurance Company's Motion for Summary Judgment (ECF No. 40) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike Defendant's Reply Brief, or in the Alternative, Motion for Leave to File a Sur-Response to Defendant's Motion for Summary Judgment (ECF No. 50 ) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Plaintiff is entitled to judgment for the $50,000 accidental death benefit under the Symetra Group Insurance Policy issued to Phelps County Bank.

An appropriate judgment will accompany this Memorandum and Order.

_Ronnie L. White_

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 3rd day of January, 2022.