## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| TERRI M. YATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:19-CV-154 RLW |
| | ) | |
| SYMETRA LIFE INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This closed case under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, et seq., is before the Court on Plaintiff Terri M. Yates' Affidavit and Motion for Attorney's Fees and Costs (ECF No. 74). Defendant Symetra filed a memorandum in opposition (ECF No. 77), and the Court ordered Symetra to file a memorandum setting forth the hourly rate charged by each of its attorneys and submit its billing statements. Defendant complied with the Court's order (ECF No. 80). Plaintiff did not file a reply in support of her motion and the time to do so has expired. The motion is ready for ruling.

For the following reasons, the Court will grant Plaintiff's Motion for Attorneys' Fees in the amount of $54,058.50 but will not award Plaintiff her costs.

**I. Background**

This removed case was an action for $50,000 in accidental death benefits under ERISA. Plaintiff Terry M. Yates' ("Plaintiff" or "Ms. Yates") husband, Johnny Yates, died from a heroin overdose on December 20, 2016, at the age of 50. At the time, Ms. Yates was a participant in an ERISA employee benefits group insurance policy provided by her employer. As Ms. Yates' spouse, Johnny Yates was an insured under the policy's coverages for Life Insurance and Accidental Death and Dismemberment. After her spouse's death, Ms. Yates filed claims under both coverages.

Symetra paid the life insurance benefit but denied the accidental death benefit on the ground that Mr. Yates' death was excluded from coverage by an "intentionally self-inflicted injury" policy exclusion "in view of the fact that the cause of death was due to the insured's intentional act of using Heroin[.]" (ECF No. 42-4 at 3.)

Symetra moved for summary judgment on Plaintiff's ERISA claim for accidental death benefits, asserting it was entitled to judgment based on Plaintiff's failure to exhaust administrative remedies, and on the merits of the denial. The Court found that Plaintiff failed to exhaust administrative remedies before filing suit and granted Symetra's motion for summary judgment on that issue. The Court did not reach the merits of Symetra's denial and dismissed the case without prejudice.

Plaintiff filed a Motion to Alter or Amend Judgment under Rule 59(e), Federal Rules of Civil Procedure. Plaintiff asserted the Court erred in holding she failed to exhaust administrative remedies that were contained in Symetra's denial of benefits letter only, because the ERISA plan document at issue did not include a review procedure to exhaust. The Court granted Plaintiff's post-judgment motion, reconsidered its initial decision, and concluded Plaintiff was not required to exhaust administrative remedies that were not contained in the ERISA plan. Reaching the merits for the first time, the Court concluded on de novo review that Symetra's decision to deny accidental death benefits was erroneous and that Plaintiff's claim was not barred by a policy exclusion. The Court entered judgment in Plaintiff's favor. Symetra filed a Notice of Appeal.

The parties filed a joint motion for extension of time for Plaintiff to file a motion for attorneys' fees, asking that Plaintiff's fee motion be due thirty days after the Eighth Circuit Court of Appeals reached a decision on the appeal. The Court denied the motion but granted Plaintiff an additional thirty days to file her motion for attorneys' fees. See Mem. and Order of Jan. 19, 2022 (ECF No. 73).

**II. Plaintiff's Motion for Attorneys' Fees**

Plaintiff seeks her attorneys' fees incurred in bringing this action and in filing the post-judgment motion on which she prevailed.[1] Symetra opposes the award of any fees to Plaintiff.

    A.  Applicable Legal Standards

"ERISA Section 502(g)(1) . . . permits 'the court in its discretion [to] allow a reasonable attorney's fee and costs of action to either party.'" Thole v. U.S. Bank, N.A., 873 F.3d 617, 630 (8th Cir. 2017) (quoting 29 U.S.C. § 1132(g)(1)). "[A]s a threshold matter, 'a fees claimant must show some degree of success on the merits before a court may award attorney's fees under § 1132(g)(1).'" Id. (quoting Hardt v. Reliance Std. Life Ins. Co., 560 U.S. 242, 255 (2010)). This "standard is satisfied 'if the court can fairly call the outcome of the litigation some success on the merits without conducting a lengthy inquir[y] into the question whether a particular party's success was "substantial" or occurred on a "central issue."'" Id. (alteration in original) (quoting Hardt, 560 U.S. at 255).

In deciding whether to award fees in ERISA cases, courts are guided by the five non-exclusive factors set forth in Lawrence v. Westerhaus, 749 F.2d 494, 496 (8th Cir. 1984) (per curiam), and "other relevant considerations as general guidelines for determining when a fee is appropriate." Dakotas and Western Minn. Elec. Indus. Health and Welfare Fund v. First Agency, Inc., 865 F.3d 1098, 1105 (8th Cir. 2017) (quoting Martin v. Ark. Blue Cross & Blue Shield, 299 F.3d 966, 972 (8th Cir. 2002) (en banc)). The factors are: "(1) the degree of the opposing parties' culpability or bad faith; (2) the opposing parties' ability to satisfy an award; (3) deterrence of others in similar circumstances; (4) whether the requesting parties sought to benefit all participants and beneficiaries of an ERISA plan, or to resolve a significant legal ERISA question; and (5) the

---

[1] Plaintiff requests the Court to declare that its award of attorneys' fees is "without waiver or prejudice to [her] right to seek additional fees and costs" with respect to Symetra's appeal. (ECF No. 74 at 1-2.)  The Court denies this request.  Plaintiff may file an application for attorneys' fees with the Eighth Circuit Court of Appeals if she prevails on appeal.

relative merits of the parties' positions." Johnson v. Charps Welding & Fabricating, Inc., 950 F.3d 510, 525 (8th Cir. 2020) (citing Westerhaus, 749 F.2d at 496). The factors are not to be mechanically applied. Id. Further, "The Court need not review each factor 'exhaustively and explicitly.'" Worlitz v. Bd. of Trustees, Dist. No. 9, 2020 WL 529309, at *1 (E.D. Mo. Feb. 3, 2020) (quoting Griffin v. Jim Jamison, Inc., 188 F.3d 996, 997 (8th Cir. 1999)).

B. Discussion

As a preliminary matter, Plaintiff ultimately prevailed both on the issue of the exhaustion requirement and on the merits of her benefits claim. She is therefore eligible for consideration for an award of her attorneys' fees. See Hardt, 560 U.S. at 255. The Court now turns to the relevant factors.

The first factor is the degree of the opposing party's culpability or bad faith. The Court does not find that Symetra's conduct in this case was culpable or in bad faith, so this factor is neutral.

The second factor is the ability of the opposing party to satisfy an award of attorney's fees. Plaintiff submits publicly available information from Symetra's website to show it and its parent company had total assets of over $370 billion as of March 21, 2021, and Symetra had over $100 million in profit from adjusted pre-tax income from operations in 2019 and 2020. (ECF No. 74 at 3.) Symetra's ability to pay weighs in favor of an award of fees.

The third factor is whether an award of attorney's fees against Symetra could deter other persons acting under similar circumstances. Symetra will be financially affected by having to pay attorneys' fees in addition to the $50,000 benefits at issue. The payment of a monetary sum would deter a rational company from denying benefits based on a requirement that is not present in plan documents. The Court finds this factor weighs in favor of an award of fees.

The fourth factor is whether the party requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding

4

ERISA itself. Here, Plaintiff's claim was to obtain benefits for herself only, but it also sought to clarify a significant legal question: whether a plan administrator can impose an administrative appeal requirement if the plan language itself does not contain an administrative appeal provision. The determination that a plan administrator cannot impose an administrative appeal requirement in the absence of plan language requiring an appeal will benefit all future participants under the Symetra plan and other plans that do not contain an administrative appeal requirement. This factor weighs in favor of an award of fees.

Finally, the Court considers the relative merits of the parties' positions. Although the Court initially accepted Symetra's arguments as to administrative exhaustion, on reconsideration it concluded Symetra's arguments were unsound under relevant Eighth Circuit and Supreme Court precedent. The Court held that under ERISA, Symetra could not require Plaintiff to exhaust administrative appeals prior to filing this action because the written plan documents did not contain any appeal procedures to exhaust. It further held that Symetra could not add new appeal procedures by included them in its benefits denial letter. In addition, when the Court reached the merits of Plaintiff's claim for wrongful death benefits, it concluded Symetra's decision to deny accidental death benefits was erroneous, as the decision was based on an unreasonable interpretation of the plan language. The Court also concluded Plaintiff's claim was not barred by a policy exclusion for intentionally self-inflicted injuries. This factor weighs in favor of an award of fees.

The Court will award Plaintiff her reasonable attorneys' fees because the relevant factors as discussed above weigh in favor of such an award.

  C. <u>Plaintiff's Requested Attorneys' Fees</u>

The party seeking the award must submit evidence supporting the requested hours and rates, making a good faith effort to exclude from a fee request hours that are "excessive, redundant, or otherwise unnecessary[.]" <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 434 (1983). "To calculate attorney's

5

fees, courts typically begin by using the lodestar method, which multiplies the number of hours reasonably expended by reasonable hourly rates." Bryant v. Jeffrey Sand Co., 919 F.3d 520, 529 (8th Cir. 2019) (citing Brewington v. Keener, 902 F.3d 796, 805 (8th Cir. 2018)).  Courts may consider a number of factors in determining a reasonable attorney's fee, including the time and labor required to litigate the case, the novelty and difficulty of the questions involved, the skill required to perform the services properly, customary fees, the results obtained, and awards in similar cases.  See McDonald v. Armontrout, 860 F.2d 1456, 1459 & n.4 (8th Cir. 1988).  "When determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates."  Bryant, 919 F.3d at 529 (quoting Hanig v. Lee, 415 F.3d 822, 825 (8th Cir. 2005)).

For purposes of the lodestar analysis, Plaintiff submits the following attorneys' hourly rates and hours expended in this matter:

| Attorney name | Hours | Rate | Total |
|---|---|---|---|
| David A. Osborne | 78.90 | $325 | $25,642.50 |
| Glenn R. Kantor | 12.10 | $800 | $ 9,680.00 |
| Sally Mermelstein[2] | 51.70 | $700 | $36,190.00 |
| | | | $71,512.50 |

Plaintiff's motion is supported by affidavits and declarations under 28 U.S.C. § 1746 of her attorneys, describing their backgrounds and experience and providing details of their hours billed. (ECF Nos. 74, 75, 75-3).  Plaintiff submits the declaration of J. Kent Robinson, a longtime Missouri attorney and the Chief Legal Counsel for Phelps County Bank, Plaintiff's employer, which states that Mr. Osborne's requested hourly rate is reasonable and well within the range of appropriate rates for attorneys who practice employment law in this District. (ECF No. 74-2.)  Plaintiff submits the declaration of attorney Matthew Davis of Gallagher Davis, LLP, who represents plaintiffs in

---

[2] Ms. Mermelstein did not enter an appearance in this case.

6

employee benefit litigation in this District. Mr. Davis states that Mr. Kantor has "an extensive depth of knowledge of ERISA regulations and precedent," is "an incredibly experienced ERISA litigator and brings a unique and valuable perspective," and is a legal strategist who "provide[s] support to ERISA plaintiffs' attorneys on a nationwide basis." (Id. at 3.) Mr. Davis states there are "very few experienced ERISA plaintiff's attorneys" in the Eastern District of Missouri, and opines that the present St. Louis market rate for attorneys' services with Mr. Kantor's experience in complex ERISA matters is $500-$600 per hour. (ECF No. 75-4 at 2-3.)

Symetra does not challenge Mr. Osborne's hourly rate but argues the hourly rates of Mr. Kantor and Ms. Mermelstein, who are from California and Minnesota, respectively, are excessive and not appropriate for ERISA litigation in this District. Symetra suggests a reasonable rate for all three attorneys should be "no higher than $325 per hour." (ECF No. 77 at 8.) In support, Symetra cites a single Eastern District of Missouri opinion that awarded an hourly rate of $300 in ERISA litigation. (Id.) Symetra does not challenge Mr. Osborne's $325 hourly rate, but identifies 13.6 hours billed by Mr. Osborne it contends are unreasonable, excessive, or redundant. Symetra objects to 4.6 hours billed by Mr. Kantor and .22 hours billed by Ms. Mermelstein to review this Court's original decision before they were retained by Plaintiff. Finally, Symetra makes a conclusory assertion that the Kantor & Kantor attorneys' billing is excessive. (Id. at 9.)

   *1. Hourly Rates of California Counsel*

Symetra does not dispute the experience and backgrounds of Mr. Kantor and Ms. Mermelstein, but asserts that their hourly rates exceed what is reasonable and customary for ERISA attorneys in this District. The Court agrees in part, based on its experience with this case, ERISA and other complex cases in general, and its knowledge of prevailing attorney hourly rates in this area and as awarded by this Court. See Banks v. Slay, 875 F.3d 876, 882 (8th Cir. 2017) (district court "is 'intimately familiar' with its local bar.") (quoted case omitted).

7

a. Mr. Kantor's Hourly Rate

Plaintiff seeks $800 per hour for Mr. Kantor's work.  Recently, this Court found that hourly rates up to $450 per hour were reasonable for attorneys in an ERISA action in the St. Louis area. See Magruder Constr. Co., Inc. v. Gali, 2020 WL 4535122, at *3 (E.D. Mo. Aug. 6, 2020).  Billing data from Missouri Lawyers Media indicates that in the St. Louis area, the partner median hourly rate in 2021 was $450, based on a pool of 77 lawyers, and the statewide median for partners was $475.[3]  The 2021 Real Rate Report, a Wolters Kluwer publication, is more useful in determining an appropriate hourly rate because it provides a number of data points for assessing the reasonableness of counsel's hourly rates, based on actual billing rates charged to clients by St. Louis attorneys.[4] The Real Rate Report shows that the first quartile partner rate for ERISA litigation attorneys in St. Louis is $450, the median rate is $495, the third quartile rate is $645, and the mean rate is $553.  Id.

---

[3]See   https://molawyersmedia.com/2021/11/29/billing-rates-2021-fee-awards-few-and-far-between-during-pandemic/ (last visited May 20, 2022).  The Missouri Lawyers Media billing rates survey article states that fewer reported decisions are available for the years 2020 and 2021 combined than for its 2019 survey, because fewer cases were tried as a result of the COVID-19 pandemic.  Id.  The data it reports "primarily comes from fee applications filed with state and federal courts in Missouri, often from cases that operate under a fee-shifting statute, such as in employment and civil-rights cases.  Many such cases have been unable to secure trial dates during the pandemic—and without a prevailing side to request its legal costs, those fees remain unshifted and undisclosed."  Id.  The 2021 billing rates survey does not include any fee awards in ERISA matters.  For these reasons, the Court finds the survey is a less useful source of relevant comparison fees in this case than the Wolters Kluwer 2021 Real Rate Report, and the Court's own knowledge of attorneys' fees in the region.

[4]The 2021 Real Rate Report is a useful gauge of the reasonable rates in the Eastern District of Missouri, because it is "based on actual legal billing, matter information, and paid and processed invoices from a wide range of companies.  The Real Rate Report is 'a much better reflection of true market rates than self-reported rates.'" Myers v. Aetna Life Ins. Co., No. CV 19-9555 DSF (KSX), 2021 WL 5532699, at *4 (C.D. Cal. Mar. 31, 2021) (quoted case omitted).  The 2021 Real Rate Report states that it "[i]dentifies rates by location, experience, firm size, areas of expertise, industry and timekeeper role (i.e., partner, associate, and paralegal)."  Real Rate Report at 5.  Its analysis "derive[s] from the actual rates charged by law firm professionals as recorded on invoices submitted and approved for payment." Id. at 4.  The 2021 Real Rate Report reflects market rates in St. Louis in the ERISA practice area, as it analyzes billing data from local ERISA attorneys.  Id. at 49.  The Court obtained access to the 2021 Real Rate Report through the U.S. Court of Appeals Library for the Eighth Circuit, and expresses its appreciation to the library.

at 49 (based on 19 attorneys).[5]  For non-litigation ERISA attorneys, the first quartile partner rate in St. Louis is $482, the median rate is $620, the third quartile rate is $789, and the mean rate is $648. Id. (based on 70 attorneys).  The Court finds the ERISA litigation partner rate for St. Louis attorneys as shown in the 2021 Real Rate Report is the appropriate benchmark for Mr. Kantor's hourly rate in this case.

In addition, "[T]he special skill and experience of counsel should be reflected in the reasonableness of the hourly rates."  Hendrickson v. Branstad, 934 F.2d 158, 164 (8th Cir. 1991) (quoted case omitted).  The Court finds that Mr. Kantor is highly qualified and has over thirty-five years' experience, primarily in the practice area of ERISA-regulated employee benefit plans. (ECF No. 75 at 2.)  Mr. Kantor's Declaration states in part that over the past 29 years, he has either personally handled or supervised the prosecution of no less than 3,000 ERISA matters representing the claimant. (Id.)  While most of the cases settled prior to judgment, he has obtained judgments in close to 100 ERISA cases and has been appellate counsel if those matters were appealed. (Id.)  In each of the past twelve years, Mr. Kanton has been named a "Super Lawyer" by a Los Angeles Magazine in the area encompassing ERISA litigation. (Id.)  On more than one occasion, Mr. Kantor has been called by U.S. District Court for the Central District of California Magistrate Judges while they were presiding at settlement conferences to ask his opinion as to the applicable law on an ERISA question which arose during a settlement conference. (Id. at 3.)  On several occasions, Mr. Kantor has been asked to assist the family members of ERISA defense counsel, mediators, and U.S. District Court Judges on ERISA matters. (Id.)  Mr. Kantor's law firm, Kantor & Kantor, receives inquiries from attorneys all over the country regarding ERISA issues, and since 2018 has published a weekly summary of all ERISA cases disseminated on Westlaw and Lexis

---

[5] The 2021 Real Rate Report does not provide information as to fourth quartile or maximum rates.

called "ERISA Watch." (Id.; ECF No. 75-1.) The ERISA Watch distribution list has nearly 1,000 recipients, including defense lawyers, mediators, some past and present members of the Federal Judiciary, and their law clerks. (ECF No. 75 at 3.)

With these considerations in mind, the Court will reduce Mr. Kantor's hourly rate to $700 per hour, consistent with its estimate of the fourth quartile of ERISA litigation partner billing rates in the St. Louis market. Mr. Kantor billed a total of 12.1 hours. At $700 per hour, this is a total of $8,470.00.

### b. Ms. Mermelstein's Hourly Rate

Plaintiff seeks $700 per hour for Ms. Mermelstein's work. Mr. Kantor's Declaration states that Ms. Mermelstein is one of Kantor & Kantor's "senior attorneys" and her practice is "largely focused on ERISA appellate work at the Circuit level." (ECF No. 75 at 6, ¶15.) Mr. Kantor states that the underlying basis for Ms. Mermelstein's rate of $700 per hour is contained in her Declaration. (Id. at 7, ¶ 17.) Ms. Mermelstein's Declaration states that she has been licensed in Minnesota since 2003 and her practice since admission has been principally in the ERISA area. (ECF No. 75-3 at 2-3.) Ms. Mermelstein has been affiliated with Kantor & Kantor since 2019 and she is "of counsel" with the firm. (Id. at 2.) Ms. Mermelstein has advised and/or co-written briefs in more than 100 ERISA appeals filed in all Federal Circuits. (Id. at 3-4). She is currently counsel of record in at least five Circuit-level matters in which Kantor & Kantor represents a party. (Id. at 4.)

The Missouri Lawyer's Media 2021 billing rates survey shows that the statewide median hourly rate for "other attorneys," including of-counsel, staff attorneys, and others whose titles were not apparent from court filings or firm websites, was $300 per hour. The Court finds this information is too general to be useful because the category of "other attorneys" is both overly inclusive and not specific to ERISA litigation. The 2021 Real Rate Report does not provide

separate billing information for "of counsel" attorneys, but it shows the median associate rate in St. Louis for ERISA litigation attorneys is $325, the third quartile rate is $369, and the median rate is $329. Real Rate Report at 49.

The Court finds Ms. Mermelstein's experience and qualifications warrant a higher hourly rate than that of ERISA litigation associates. The hourly rate awarded should be commensurate with the attorney's experience and expertise and not based solely on her job title. As such, the appropriate rate for an of counsel attorney is not necessarily the same as an associate's rate and in some instances may equal or even exceed a partner's rate.[6]

Ms. Mermelstein has eighteen years' experience, primarily in the ERISA area, and she specializes in ERISA appellate work at the Federal Circuit level. ERISA is a complex statute and area of the law, one that requires significant expertise and skill, and parties with ERISA cases are best served by attorneys who specialize in the practice area. Ms. Mermelstein's work in this case was of high quality and persuaded the Court to change its original, carefully considered decision. For these reasons, the Court finds the ERISA litigation partner rate for St. Louis attorneys shown in the 2021 Real Rate Report is the appropriate benchmark for Ms. Mermelstein's hourly rate. The Court will award fees for Ms. Mermelstein's work at the rate of $450 per hour, as her experience and skills appear to match up with the first quartile partner rate for ERISA litigation attorneys in St. Louis. Ms. Mermelstein billed a total of 51.7 hours. At $450 per hour, this is a total of $23,265.00.

---

[6]Although not applicable here, the Court notes that some "of counsel" are senior partners who have had to step down from partner status under the terms of firm partnership agreements. Further, there appears to be an ongoing shift in the legal profession away from a lockstep associate/partner track, for myriad reasons including generational changes and preferences, gender roles, and the COVID-19 pandemic, among others. As a result, experience and expertise are more important than job title in determining a reasonable and appropriate hourly fee award.

*2. Mr. Osborne's Expended Hours*

Symetra identifies 24.2 hours billed by Mr. Osborne it contends are unreasonable, excessive, or redundant. Symetra challenges 6.9 hours expended in preparing an unsuccessful motion to remand the case to state court; 3.7 hours in an unsuccessful attempt to "default Defendant;" 9.5 hours related to researching exhaustion of remedies, which Symetra claims is "excessive on its face;" and 4.1 hours related to the motion to reconsider after Mr. Kantor enter his appearance in the case. (ECF No. 77 at 8-9.)

The Court will not disallow the 6.9 hours spent preparing the briefing on the motion to remand for lack of subject matter jurisdiction and the reply. Plaintiff originally filed a breach of contract claim in state court and Symetra removed the case to this Court. Plaintiff argued the Court should remand the case because the Symetra benefit policy, specifically the accidental spousal death benefit portion at issue, was exempt from ERISA under the "safe harbor" provision promulgated by the United States Department of Labor in 29 C.F.R. § 2510.3-1(j). Although the Court ultimately rejected this argument, there did not appear to be any Eighth Circuit precedent on point and Plaintiff's argument was not frivolous. Plaintiff asserted a single claim in this case, and the issue whether federal subject matter jurisdiction existed was intrinsic to it. This was not a case where Plaintiff asserted multiple claims and was unsuccessful on some unrelated claims, such that a fee reduction for the unsuccessful claims could be appropriate. Cf. Emery v. Hunt, 272 F.3d 1042, 1046 (8th Cir. 2001) ("When a plaintiff has prevailed on some claims but not on others, the plaintiff may be compensated for time spent on unsuccessful claims that were related to his successful claims, but not for time spent on unsuccessful claims that were 'distinct in all respects from his successful claims.'" (quoted case omitted). Fees for these hours will be awarded.

The Court will not disallow Mr. Osborne's 3.7 billed hours for Plaintiff's motion for default judgment and reply in support. Plaintiff was granted leave of Court to file an amended complaint

12

on October 25, 2019 (ECF No. 21). Symetra's response to the amended complaint was due fourteen days later. Rule 15(a)(3), Fed. R. Civ. P. Plaintiff filed a motion for default on January 15, 2020, eighty-two days after she filed the amended complaint. (ECF No. 22.) Symetra filed a late opposition to the motion for default on February 24, 2020, which asserted the rather remarkable proposition that it did not believe an answer to the amended complaint was required, even though the Court granted leave for its filings, because of certain alleged deficiencies in the amended pleading. (ECF No. 23.) Symetra also complained that Plaintiff's counsel did not contact its counsel prior to filing the motion. (Id.) Symetra does not explain why it did not timely respond to the motion for default.

While Plaintiff's counsel might have contacted Symetra's counsel prior to filing the motion for default, as a matter of professional courtesy, he was not required to do so. In contrast, the Federal Rules of Civil Procedure required Symetra to respond to the amended complaint, by filing an answer or a motion to dismiss, but it failed to do so. Responsibility for the hours Mr. Osborne expended on the default motion rests with Symetra. The fees claimed are appropriate and will be awarded.

The Court also will not disallow Mr. Osborne's 9.5 hours spent in researching ERISA exhaustion of remedies. The issue was of key importance in the case and was complex, as reflected by the parties' disparate briefing and the lengthy discussion in the Court's two orders addressing it. Symetra's summary assertion that the hours expended are facially excessive is not persuasive. The Court spent far more than 9.5 hours researching this issue on the parties' initial briefing.

Finally, the Court will not disallow Mr. Osborne's 4.1 hours for work on the motion to reconsider after Mr. Kantor entered his appearance in this case. Symetra contends these hours are necessarily redundant, without offering any specifics. In the absence of information explaining the

13

claimed redundancy, Symetra's argument is merely that two attorneys cannot work on a case at the same time.

### 3. Kantor & Kantor Attorneys' Expended Hours

Symetra challenges 4.6 hours billed by Mr. Kantor and .22 hours billed by Ms. Mermelstein on June 2, 2021, prior to the time they were retained, for review of the Court's original decision in favor of Symetra and relevant Eighth Circuit precedent. The Court will disallow these hours. The Kantor & Kantor attorneys made a business decision to familiarize themselves with the facts of the case and controlling law in preparation for contacting Plaintiff's counsel to offer their services. This was marketing research. Had Plaintiff rejected their offer, this time could not have been billed to anyone and would have been written off. No fees will be awarded for hours billed when Plaintiff was not yet a client of the firm. The Court will reduce Mr. Kantor's fee by $3,220.00 (4.6 x $700) and Ms. Mermelstein's fee by $99.00 (.22 x $450).

Symetra also asserts generally that the Kantor & Kantor attorneys' billing is excessive, stating in support: "Suffice it to say that 63.8 hours to prepare two briefs on the limited subject of exhaustion of remedies when extensive research and briefing already occurred is excessive, redundant and unreasonable." (ECF No. 77 at 9.) Symetra does not identify any specific hours it claims fall within these categories, but asserts the "number of hours claimed should be reduced in a significant way." (Id.)

As a threshold matter, in addition to being conclusory, Symetra's argument is somewhat factually misleading in two respects. First, Kantor & Kantor billed 63.8 hours for all of their work on the case, which encompassed more than "preparing two briefs on the limited subject of exhaustion of remedies." This includes, but is not limited to, reviewing the existing Court record, reviewing Symetra's opposition memorandum, and communicating with Plaintiff's counsel Mr. Osborne, in addition to the 4.82 hours the Court excluded for marketing research on the case. (See

14

ECF No. 75-2). While Symetra does not quantify the hours Kantor & Kantor actually billed for researching and drafting the two briefs, the Court notes that the majority of Ms. Mermelstein's 51.7 billed hours appear to have been expended in research and writing.[7]

Second, contrary to Symetra's assertion, the post-judgment briefing addressed the Rule 59(e) standard and the merits of the case in addition to the "limited subject" of exhaustion of remedies. The merits decision encompassed two separate issues: whether Symetra's decision to deny accidental death benefits was erroneous, and whether the policy's self-inflicted injury exclusion applied. And in her reply brief, Plaintiff also asked the Court to consider the alternative remedy of ordering a remand to Symetra to accept an appeal, a remedy she suggested "would relieve any concern that the exhaustion doctrine addresses without simultaneously causing inequity." (ECF No. 59 at 18-19.)

In preparing the Rule 59(e) motion, Plaintiff had the significant burden of persuading the Court it had made a manifest error of law on the administrative exhaustion issue. Plaintiff also needed to convince the Court that Symetra's decision to deny accidental death benefits was erroneous, and that the policy's self-inflicted injury exclusion did not apply. Plaintiff's prior briefing had been insufficient to cause the Court to rule in her favor on the exhaustion issue and, more importantly, to reach what it now concludes to be the correct outcome on that issue and the merits under the controlling law and the facts of the case.

As the proponent of the motion, Kantor & Kantor attorneys prepared fifteen-page opening and reply briefs, while Symetra prepared only one. See Childress v. Fox Assocs., LLC, No. 4:16-CV-931 CDP, 2018 WL 3208558, at *2 (E.D. Mo. June 29, 2018) ("'[T]he number of hours

---

[7]Symetra complains that "it is difficult to identify the precise number of hours [Ms. Mermelstein] billed based on her peculiar billing method." (ECF No. 77 at 9.) Ms. Mermelstein uses a software program called Toggl (ECF No. 75-3 at 7) that records her time expenditures by hundredths of an hour, as opposed to tenths of hours. Her time expenditures as listed on Kantor & Kantor's cumulative attorney time sheet (ECF No. 75-2) can be added up in the same way as hours billed by tenths. The Court has no difficulty with this.

required by opposing counsel to defend a claim has little relevance to the reasonableness of the number of hours which plaintiffs' counsel devoted to pursuing a cause of action on behalf of a plaintiff in a given case.'") (quoted case omitted). The Court does not consider approximately 45 hours expended on researching and drafting two high-quality briefs on multiple, complex ERISA issues to be excessive.

The Court will award Plaintiff her attorneys' fees as follows:

| Attorney name | Hours | Rate | Total |
|---|---|---|---|
| David A. Osborne | 78.90 | $325 | $25,642.50 |
| Glenn R. Kantor | 7.50 | $700 | $ 5,250.50 |
| Sally Mermelstein | 51.48 | $450 | $23,166.00 |
| | | | $54,058.50 |

## III. Plaintiff's Motion for Costs

The Court's Judgment assessed costs against Symetra. (ECF No. 63.) Plaintiff's motion includes a request for costs but does not expressly identify the amount of costs sought. The Court's Local Rules require that "a party seeking an award of costs must file a verified bill of costs, in the form prescribed by the Clerk, no later than twenty-one (21) days after entry of final judgment by the District Court pursuant to Fed. R. Civ. P. 58." E.D. Mo. L.R. 8.03(A)(1). The Local Rule also states, "Failure to file a bill of costs within the time provided may constitute a waiver of taxable costs." E.D. Mo. L.R. 8.03(A)(2).

Plaintiff did not file a verified bill of costs using the AO-0133 Form required by the Clerk. Nor did Plaintiff submit any documentation to support the costs she requests, as required by Form AO-0133 at 1 ("*SPECIAL NOTE:* Attach to your bill an itemization and documentation for requested costs in all categories."). Instead, Plaintiff merely submits the itemized billing statement of her attorney David A. Osborne that include three items of expense listed among the attorney time

expenditures. These are a state court filing fee ($103.50) and process server fee ($30.00), and half of the mediator's fee ($1,065.00), for a total of $1,198.50.[8]

Even if the Court were to excuse Plaintiff's failure to file a separate bill of costs, her request is fatally deficient because it is not accompanied by the required verification. "Before a district court is permitted to award costs to a prevailing party, the prevailing party *must* submit an affidavit meeting non-discretionary statutory requirements:

> Before any bill of costs is taxed, the party claiming any item of cost or disbursement *shall attach thereto an affidavit*, made by himself or by his duly authorized attorney or agent having knowledge of the facts, *that such item is correct and has been necessarily incurred in the case and that the services for which fees have been charged were actually and necessarily performed*.

28 U.S.C. § 1924 (emphasis added)." Reece v. Bank of New York Mellon, 760 F.3d 771, 779 (8th Cir. 2014).

Plaintiff's attorneys submitted several verified documents in support of the Motion for Attorney's Fees and Costs. None of these meet the statute's requirements, however, because they do not aver or declare that the cost items were "correct" and "necessarily incurred in the case." See Reece, 760 F.3d at 779. "Because the statute leaves no room for discretion, [Plaintiff] is prohibited from receiving an award of costs." Id.; 28 U.S.C. § 1924.

**IV. Conclusion**

For the reasons discussed above, the Court will grant Plaintiff's Motion for Attorneys' Fees in the amount of $54,058.50. Plaintiff's motion for costs is denied.

---

[8] A mediator's fee is not an item of taxable cost under 28 U.S.C. § 1920. Brisco-Wade v. Carnahan, 297 F.3d 781, 782 (8th Cir. 2002).

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Attorney's Fees and Costs (ECF No. 74) is **GRANTED in part** and **DENIED in part**. The Motion is **GRANTED** to the extent that Plaintiff is awarded her attorneys' fees of Fifty-Four Thousand Fifty-Eight Dollars and Fifty Cents ($54,058.50), and is **DENIED** as to costs.

An Amended Judgment will issue separately.

*Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 23rd day of May, 2022.